TEL-ELECTRIC CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 6662.  Promulgated October 25, 1927.

Commissioner's valuation of inventories approved for lack of evidence.

*Camden R. McAtee, Esq.*, for the petitioner.
*Jos. K. Moyer, Esq.*, for the respondent.

The deficiency is of income taxes for the calendar year 1920 in the amount of $897.27. An allegation of error is that the Commissioner used a closing inventory of 1920 which contained two errors, some wire being inventoried at cost, whereas market was lower, and some ice machines being inventoried at cost, whereas they were valuable only as junk. Other errors were alleged, but were admittedly not supported by any competent evidence.

## FINDINGS OF FACT.

The petitioner is a corporation organized under the laws of the State of Texas. It conducts a retail business in Houston, selling electrical supplies.

Its inventories were made on the basis of cost or market, whichever was lower.

Its method of taking its closing inventory for 1920 was as follows:

All items of merchandise in stock were counted and the description and quantity of each kind of merchandise was written on a stock card. These stock cards were then assembled and from them the department head made an original and a carbon duplicate list showing the quantity and description of each. The carbon duplicate list was kept by the department and the original was sent to the main office where the purchasing department extended each item to show its cost or market value whichever was lower, and this list then represented the inventory. In making these extensions use was made of so-called purchase cards, which showed the name of the manufacturer from whom goods had been received, the date received, the amount received and the cost. The entries on these cards were usually made when the goods were received. If after goods were received there was a revised price received from the manufacturer the revised price was not always entered on the card.

The original inventory sheets of the closing inventory of 1920 have been lost. The following entries appear on the carbon duplicates:

" 98021 ft 14 Bx 2 Cable "

" 8 Small Size Isko Ice Machines "

The purchase card for the cable shows that the last purchase in 1920 was made on September 20, 1920, 30,000 feet, at a net cost of $191.16 per thousand feet. It shows no revised price from that date to the end of the year.

From December 17, 1920, to January 3, 1921, the Youngstown Sheet & Tube Co., from whom the petitioner had purchased some of its " 14 Bx 2 Cable," quoted this type of cable at $60 per thousand feet f. o. b. Pittsburgh.

The purchase card for the Isko ice machines had been lost, but the invoice records show that 8 small machines cost $2,163.20. This type of machine was impractical for use in the vicinity of Houston, and about the last of 1920, or the first of 1921, the petitioner gave up the sale of the machines. Any that it had sold were taken back by the petitioner, but it was unable to get the manufacturer to make any refund or adjustment on account of the failure of the machines. Some of the machines on hand on December 31, 1920, had been used, others had not. Later the petitioner sold six of these machines to an electrical contractor for $60 or $75 for the lot.

The Commissioner accepted as correct the inventory for the close of the year as shown by the revenue agent's report.

OPINION.

MURDOCK: In making its income report for the year 1920, the petitioner, of course, used its closing inventories for that year. The sheets of paper on which this inventory was written out have now been lost. The petitioner contends that in this inventory a quantity of wire was included at cost, when, as a matter of fact, the market value of the wire was less than cost. It further contends that the Commissioner has not changed this inventory, and that therefore there is an error in the Commissioner's computation. It makes the same contention in regard to eight Isko machines. We have no positive evidence of the figures at which the wire and the Isko machines were entered on the inventory. The evidence upon which the petitioner relies to prove its contentions is largely circumstantial and the petitioner asks us to draw certain inferences from this circumstantial evidence to support its contention.

The petitioner's contention may be stated somewhat syllogistically as follows:

Market value of this cable was less than cost.

My inventory values have always been taken from my purchase cards alone. These cards always show cost and if I know that market differs from cost they also show market. The purchase card for this wire cable shows only cost. Therefore I did not know that market was lower and I must have used cost in my inventory. Cost being used in my inventory was also reflected in my return. The revenue agent corrected neither my inventory nor my return, because the inventory sheet was lost before he came to examine my records and I was not able to convince him of my error. The Commissioner admits that the inventory as shown in the revenue agent's report has been accepted as correct. Therefore, the Commissioner's determination is erroneous because it involves an inventory taken at cost when market was lower.

The logic of this reasoning fails if the alleged facts are not facts. Is it a fact that the purchase cards always showed market as well as cost when the petitioner knew that market differed from cost and that inventory values were dependent entirely on what these cards showed? If the cards only showed cost, then any market values entered on the inventory must have gotten on in some other way and the petitioner's reasoning fails completely.

On this point let us examine the testimony of the petitioner's witness, Boyle. He and Miller made some of the extensions in the closing inventory of 1920, but Boyle was unable to say whether cost or

market had been used in connection with this wire cable and the Isko machines. In trying to show that when a revised price list was received the revised price which would indicate market was entered on the purchase card, the following question was asked Mr. Boyle and he gave the following answer:

Q. Was there ever any change made in that purchase card as to the purchase price of the goods? If you got a revised list, did you make any change on the purchase card? Did you make any entry or change on the purchase card?

A. No, there was no entry made except when a new consignment of merchandise was purchased at that time.

He testified further on direct examination:

Q. Now, with reference to this cable wire, you said that, first said that the red ink on the cost card would indicate the inventory value. You later corrected that. Can you take this cost card and tell what was the inventory value of those goods for the year 1920?

A. You can tell from that cost card there, if the card was used to take the value, yes.

Q. Do you know whether in fact the cost card price was used as the inventory value of the cable wire on December, 1920, December 31st, 1920?

A. I can't say definitely, because it doesn't show there that it is.

Q. Was it the rule to take as the inventory value the cost price as shown by the purchase card, unless you had some other instructions to do otherwise?

A. Yes, sir.

Q. Do you recall whether you had any other instructions to do otherwise with reference to this particular cable wire?

A. I recall the fact that Mr. Miller, who was then General Manager of the Tel-Electric Company, and who is now located with the H. C. Roberts Electric Supply Company of Philadelphia, didn't want to show the actual market value as per the great reduction, on account of the extremely great loss that would be involved when that inventory was taken.

Such testimony leads us to believe that the inventory values were not entirely dependent upon the entries on these purchase cards, but that these cards only showed cost. Therefore the petitioner's reasoning fails because we now have nothing to indicate what was used as the inventory value of the items in controversy.

The purchase card for the Isko machines was lost after the inventory was taken and we do not know what it showed. Furthermore we have no way of inferring what amount might have been entered on the inventory as the value of these machines.

We have serious doubts about the existence of other alleged facts necessary to reach the petitioner's conclusion; consequently, we affirm the Commissioner without expressing any opinion on the merits of the petitioner's reasoning.

*Judgment will be entered for the respondent.*

Considered by MORRIS, SIEFKIN, and TRAMMELL.